1
2025 CO 32 Shaun Jeff Snow, Petitioner v. The People of the State of Colorado, Respondent No. 23SC775Supreme Court of Colorado, En BancMay 27, 2025

         
Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 21CA2074

         Judgment
Reversed

2

         
Attorneys for Petitioner: Tillman Patrick Clark, LLC Tillman
Clark Denver, Colorado

         
Attorneys for Respondent: Philip J. Weiser, Attorney General
Brock J. Swanson, Senior Assistant Attorney General Denver,
Colorado

3

         
Justice Samour delivered the Opinion of the Court, in which
Chief Justice Márquez, Justice Boatright, Justice
Hood, Justice Gabriel, Justice Hart, and Justice Berkenkotter
joined.

         
OPINION

         
SAMOUR, JUSTICE

4

         ¶1
We granted certiorari in this case primarily to consider
whether a Crim. P. 35(a) challenge regarding a
post-sentencing order setting the amount of restitution is
cognizable as an illegal sentence claim or an illegal manner
claim. See Crim. P. 35(a) (allowing a defendant in a
criminal case to file a postconviction claim to correct (1)
an illegal sentence-i.e., "a sentence that was not
authorized by law or that was imposed without
jurisdiction"-or (2) "a sentence imposed in an
illegal manner"). The answer matters: Although a trial
court may correct a sentence not authorized by law or imposed
without jurisdiction at any time, it may correct a sentence
imposed in an illegal manner only within 126 days after the
sentence is imposed. See Crim. P. 35(a)-(b). A
division of the court of appeals ruled that the Crim. P.
35(a) claim brought by the defendant, Shaun Jeff Snow, was an
illegal manner claim that was time-barred. We agree with Snow
that this was error.

         ¶2
At the sentencing hearing,[1] the district court deferred the issue
of restitution in its entirety for sixty days.
Because, with one anomalous exception not relevant here,
restitution is a component of every sentence, and because
deferring the issue of restitution in its entirety at a
sentencing hearing is not one of the restitution

5

orders authorized by section 18-1.3-603(1), C.R.S. (2024)
("subsection (1)"), Snow is correct that his
sentence was not authorized by law.

         ¶3
But that begs the question of the appropriate remedy to
correct Snow's illegal sentence. We agree with Snow on
this front as well.

         ¶4
Today, we stand firmly by our decision in People v.
Weeks, 2021 CO 75, 498 P.3d 142. Accordingly, we
conclude that the untimely restitution order entered by the
district court after sentencing (the "post-sentencing
restitution order") must be vacated.

         ¶5
Because the division erred in upholding the post-sentencing
restitution order, we reverse. We remand with instructions to
return the case to the district court so that it may enter an
order reflecting that Snow owes no restitution.

         I.
Facts and Procedural History

         ¶6
The prosecution charged Snow with one count of first degree
murder, two counts of possession with intent to distribute a
controlled substance, four counts of possession of a weapon
by a previous offender, and a special offender
sentence-enhancing count. Pursuant to a plea agreement, Snow
pleaded guilty to an added count of second degree murder in
exchange for the dismissal of all his original charges and a
stipulated sentencing range of sixteen to twenty-four years
in prison. The plea agreement did not mention restitution.
Nor was there mention

6

of restitution in the minute order summarizing the
proceedings at the providency hearing.[2]

         ¶7
At the sentencing hearing, the court honored the parties'
plea agreement and imposed a prison sentence of twenty years
in the Department of Corrections. As pertinent here, the
prosecution did not request restitution or give any
indication that it intended to seek restitution. Instead, it
simply asked the court "to reserve restitution at this
point in time." The court obliged and "reserve[d]
restitution for [sixty] days."

         ¶8
Seventy-eight days later, the prosecution filed a motion for
restitution that included the restitution
"information" required by section
18-1.3-603(2)(a)-i.e., the identity of the victim allegedly
entitled to restitution and the amount of restitution
requested.[3] Specifically, the prosecution identified
(1) the Crime Victim Compensation Board as the sole victim
entitled to restitution and (2) $13,852.60 as the proposed
amount of restitution. Thereafter-108 days after the
sentencing hearing, to be precise-the district court entered
the post-sentencing restitution order granting the
prosecution's motion. It noted that Snow had neither
responded nor objected to the prosecution's request for
restitution.

7

         ¶9
Snow did not directly appeal his conviction or sentence. He
did, however, seek reconsideration of his sentence through a
Crim. P. 35(b) motion, which did not take issue with the
post-sentencing restitution order. The district court denied
that motion.

         ¶10
More than five years later, Snow filed a pro se motion to
waive restitution, court costs, and fines. Snow contended
that (1) he was indigent, (2) it was not clear whether the
court had reserved restitution at sentencing for sixty or
ninety-one days, and (3) the court had illegally denied him a
hearing on the prosecution's request for restitution. He
asked the court to "stop taking 20[%] of all future
money, refund all past money that his family & friends
gave him [and] which was illegal to begin with and also makes
the 8% . . . interest on restitution illegal."

         ¶11
The district court denied Snow's postconviction motion
without a hearing. It found that it lacked "jurisdiction
to waive or change" the restitution ordered, "[n]o
[timely] objection to the request for restitution [had been]
made," and the restitution had been "properly
entered."

         ¶12
Snow appealed, arguing, for the first time, that his sentence
was illegal under Weeks, which we announced about
seven weeks before he filed his notice of appeal. He noted
that the district court had set the restitution amount 108
days after sentencing, which was well beyond the deadline in
section 18-1.3-603(1)(b) ("subsection (1)(b)").
Under that subsection, a trial court may enter a finding of

8

restitution liability at sentencing while postponing the
determination of the amount of restitution for up to
ninety-one days or, upon a finding of good cause, for any
longer period set by the court ("ninety-one-day
deadline" or "subsection (1)(b)
deadline").[4] Snow asked the court of appeals to correct
his illegal sentence by replacing the post-sentencing
restitution order with an order requiring no restitution.

         ¶13
A division of the court of appeals disagreed with Snow and
affirmed the post-sentencing restitution order in an
unpublished, unanimous opinion. People v. Snow, No.
21CA2074, ¶ 1 (Aug. 24, 2023). Drawing guidance from the
decision by a different division in People v.
Tennyson, 2023 COA 2, 528 P.3d 185 ("Tennyson
I"), it concluded that Snow's Crim. P. 35(a)
claim was an illegal manner claim, not an illegal sentence
claim. Snow, ¶ 10. The division cited
Tennyson I for the proposition that when "a
defendant collaterally challenges the amount of restitution
on grounds that the district court did not comply with the
procedures outlined in [subsection (1)(b)] and
Weeks, the issue is cognizable as an illegal manner
claim under Crim. P. 35(a)." Id. (quoting
Tennyson I, ¶ 33, 528 P.3d at 191).

9

         ¶14
Although acknowledging that there is no preservation
requirement for a Crim. P. 35(a) claim, see Fransua v.
People, 2019 CO 96, ¶ 13, 451 P.3d 1208, 1211, the
division pointed out that illegal manner claims are
nevertheless subject to the 126-day deadline in Crim. P.
35(b).[5] Snow, ¶ 11. And because Snow
had filed his Crim. P. 35(a) claim more than 126 days after
the imposition of his sentence, the division concluded that
the claim was time-barred. Id.

         ¶15
Snow sought our review, and we granted his petition. We
agreed to consider two issues: (1) "Whether a
postconviction challenge to the timeliness of a restitution
order is cognizable as an illegal sentence claim under Crim.
P. 35(a)"; and (2) whether the division "erred in
relying on [Tennyson I], instead of
[Weeks], in denying Snow's restitution
claim."[6]

10

         II.
Analysis

         A.
Standard of Review

         ¶16
Subject to constitutional limitations, "it is the
prerogative of the legislature to . . . prescribe
sentences." Sanoff v. People, 187 P.3d 576, 577
(Colo. 2008). Our General Assembly has long required that,
with one rare exception not pertinent here, every criminal
sentence must reflect consideration of
restitution.[7] Id. Restitution orders in
criminal prosecutions in this jurisdiction are governed by
statute and rule. See § 18-1.3-603; Crim. P.
32(b)(1) ("When imposing sentence, the court shall
consider restitution as required by section 18-1.3-603(1),
C.R.S."); Crim. P. 32(b)(3)(I) (indicating that
"[a] judgment of conviction" must include "an
order or finding regarding restitution as required by section
18-1.3-603, C.R.S.").

         ¶17
Questions of statutory interpretation are questions of law,
which we review de novo. Weeks, ¶ 24, 498 P.3d
at 151. In construing a statute, our goal is to give

11

effect to the legislature's intent. Id. at
¶ 25, 498 P.3d at 151. The first step in this endeavor
is to give the statute's "words and phrases their
plain and ordinary meaning." Id. (quoting
McCulley v. People, 2020 CO 40, ¶ 10, 463 P.3d
254, 257). We "presume that a legislature says in a
statute what it means and means in a statute what it says
there." Id. (quoting Conn. Nat'l Bank
v. Germain, 503 U.S. 249, 253-54 (1992)). Consequently,
if a statute is unambiguous, we apply it as written without
resorting to tools of statutory construction. People v.
Baker, 2019 CO 97M, ¶ 13, 452 P.3d 759, 762.

         ¶18
The same principles that apply to statutory interpretation
apply when we construe our rules of criminal procedure, which
we have plenary authority to promulgate and interpret.
Id. at ¶ 14, 452 P.3d at 762. Just as with
questions of statutory interpretation, questions of rule
interpretation are legal in nature and subject to de novo
review.[8] Hunsaker v. People, 2021 CO 83,
¶ 16, 500 P.3d 1110, 1114 (relying on People v.
Bueno, 2018 CO 4, ¶ 18, 409 P.3d 320, 325).

         ¶19
We also review de novo the legality of a sentence. Veith
v. People, 2017 CO 19, ¶ 12, 390 P.3d 403, 406.
Thus, the denial of a Crim. P. 35(a) claim asserting that

12

a sentence was either not authorized by statute or imposed
without jurisdiction is a question of law subject to de novo
review.

         B.
Colorado's Restitution Statute (Section
18-1.3-603)

         ¶20
Subsection (1) provides in pertinent part that every sentence
must include at least one of four enumerated restitution
orders: (1) an order pursuant to section 18-1.3-603(1)(a)
("subsection (1)(a)") requiring payment of an
amount of restitution; (2) an order pursuant to subsection
(1)(b) obligating the defendant to pay restitution but
indicating that the amount of restitution will be determined
within the ninety-one-day deadline; (3) an order pursuant to
section 18-1.3-603(1)(c) ("subsection (1)(c)"), in
addition to or in place of an order requiring payment of an
amount of restitution, directing the defendant to pay
restitution covering the actual costs of future treatment for
any victim; or (4) an order pursuant to section
18-1.3-603(1)(d) ("subsection (1)(d)") stating that
no payment of restitution is required because no victim
suffered a pecuniary loss.

         ¶21
An order that is not authorized by at least one of these four
subsections fails to satisfy the restitution component of a
sentence. Weeks, ¶ 3, 498 P.3d at 147-48.
Correspondingly, a sentence that fails to include one or more
of the four enumerated restitution orders in subsection (1)
is a sentence not authorized by law (i.e., an illegal
sentence) that may be corrected at any time. Tennyson v.
People, 2025 CO 31, ¶ 2, ___P.3d___
("Tennyson II"); Crim.
P. 35(a).

13

         C.
The District Court Imposed an Illegal Sentence During the
Sentencing Hearing

         ¶22
We agree with Snow that, at the sentencing hearing, the
district court imposed a sentence not authorized by law
because the mere reservation of the issue of restitution in
its entirety failed to adhere to subsection (1). See
Weeks, ¶ 2, 498 P.3d at 147. Stated differently,
the court's order at sentencing related to restitution
did not satisfy the restitution component of Snow's
sentence and judgment of conviction. See Meza v.
People, 2018 CO 23, ¶¶ 13-14, 415 P.3d 303,
307-08.

         ¶23
Nowhere does subsection (1) authorize a trial court to simply
defer the issue of restitution in its entirety. Because
restitution is a component of every sentence, and because the
district court failed to enter at least one of the four
restitution orders authorized by subsection (1), Snow
received an illegal sentence. Tennyson II, ¶ 2.

         ¶24
Of course, an illegal sentence is correctable at any time. As
we observed in a different context in Whiteaker v.
People, 2024 CO 25, ¶ 28, 547 P.3d 1122, 1128,
Colorado jurisprudence allows-and, in fact requires-courts to
correct an illegal sentence without any time limitation.

         ¶25
That leaves the question of the proper remedy to correct
Snow's illegal sentence. We turn our attention to that
issue next.

14

         D.
Snow's Sentence Must Be Corrected by Vacatur of the
Post-Sentencing Restitution Order and Entry of an Order of No
Restitution

         ¶26
Snow contends that, because the post-sentencing restitution
order failed to comply with the subsection (1)(b) deadline,
he's entitled to have it vacated pursuant to
Weeks. Although we ultimately agree with Snow on the
remedy to correct his illegal sentence, we disagree with his
rationale in arriving at that result.

         ¶27
It is true, as Snow contends, that the district court entered
the post-sentencing restitution order 108 days after
sentencing-i.e., after expiration of the subsection (1)(b)
deadline. It is also true, as Snow reminds us, that vacatur
of restitution was the remedy we granted in Weeks
for the trial court's violation of the subsection (1)(b)
deadline. ¶ 47, 498 P.3d at 157. But the subsection
(1)(b) deadline is inapposite here because the district court
never entered a subsection (1)(b) order. Rather, at
sentencing, the court merely reserved the issue of
restitution in its entirety, an order not authorized by
subsection (1). Thus, this is plainly not a subsection (1)(b)
case.

         ¶28
Because Weeks was a subsection (1)(b) case, it is
not dispositive. While our opinion there touched on the
impropriety of reserving the issue of restitution in its
entirety at sentencing, our discussion reflected that the
trial court had invoked subsection (1)(b), which permits a
finding of restitution liability at sentencing and
postponement of the determination of the amount of
restitution until after

15

sentencing. See Weeks, ¶¶ 1-3, 11, 16, 498
P.3d at 147-50. Specifically, at sentencing, the prosecution
in Weeks advised that it had already decided it
would be requesting restitution and that it intended to
identify the proposed amount of restitution after sentencing.
Id. at ¶ 11, 498 P.3d at 149. Further, the
trial court had previously granted the prosecution's
request for an amount of restitution in the codefendant's
case based on the same pecuniary losses suffered by the
same victim in the same incident. Id. at ¶
11 n.6, 498 P.3d at 149 n.6. And, following the sentencing
hearing, the court confirmed that, at sentencing, it had
entered an order allowing the prosecution ninety-one days to
submit the restitution information.[9] See id. at ¶
16, 498 P.3d at 150.

         ¶29
By contrast, here, the record of the district court
proceedings is barren of an explicit or implicit finding of
restitution liability either before or during the sentencing
hearing. Rather, the issue of restitution was conspicuously
absent from the plea agreement and the providency hearing,
and the colloquy between the court and the prosecution at the
sentencing hearing left no doubt that everyone

16

intended to defer until after sentencing the issue of
restitution in its entirety. Under these circumstances, there
is no basis for us to infer that the only issue the district
court deferred until after the sentencing hearing was the
determination of the amount of restitution.

         ¶30
We nevertheless agree with Snow that, under Weeks,
he's entitled to vacatur of the post-sentencing
restitution order and entry of an order of no restitution.
While Weeks is not on all fours, it is at least on
twos. The remedy we granted there, as well as the reasons for
it, provide guidance here.

         ¶31
We chose the remedy of vacatur in Weeks because we
could conceive of no other appropriate remedy when, on direct
appeal, a court concludes that the trial court, after
entering a subsection (1)(b) order finding restitution
liability at sentencing, fails to comply with the
ninety-one-day deadline and thus acts without authority in
determining the amount of restitution. See Weeks,
¶ 47, 498 P.3d at 157. Directing the trial court in that
situation to correct the illegal sentence by reissuing the
untimely order setting the restitution amount or issuing a
subsection (1)(a) order to accomplish the same thing would
have knocked out all the deadline's teeth.[10]

17

         ¶32
That rationale applies with equal force here. The prosecution
maintains that the post-sentencing restitution order
qualified as a subsection (1)(a) order (i.e., an order
simultaneously finding restitution liability and determining
the amount of restitution) that corrected Snow's illegal
sentence. And, since a subsection (1)(a) order is not subject
to the subsection (1)(b) deadline, the prosecution asserts
that the post-sentencing restitution order was timely.
However, were we to approve the post-sentencing restitution
order as a subsection (1)(a) order that corrected Snow's
illegal sentence, it would render portions of section
18-1.3-603 meaningless.

         ¶33
First, the prosecution's suggested methodology would
disregard subsection (1)'s requirement that, at
sentencing, trial courts must enter one or more of the four
enumerated restitution orders. Allowing trial courts to
correct their failure to adhere to this requirement by simply
entering a subsection (1)(a) order at any time would make the
requirement pointless.

         ¶34
Second, the analytical framework championed by the
prosecution would permit untimely restitution orders. We
realize that, as the prosecution observes, there is no
deadline in subsection (1)(a). But that's because orders
under subsection (1)(a) must enter at or before the
sentencing hearing. See § 18-1.3-603(1)(a)
("Every order of conviction . . . shall include
one or more of the following: . . . An order of a specific
amount of restitution . . . ." (emphases added)).
Therefore,

18

subsection (1)(a) orders entered after the sentencing hearing
are necessarily untimely.[11]

         ¶35
The acceptance of such untimely orders would directly
contravene some of the declarations our General Assembly
included as part of the restitution amendments enacted in
2000. Ch. 232, sec. 1, § 16-18.5-101, 2000 Colo. Sess.
Laws 1030, 1030-31 (Section 16-18.5-101 was relocated to
section 18-1.3-601 in 2002. See Ch. 318, sec. 2,
§ 18-1.3-601, 2002 Colo. Sess. Laws 1365, 1419). Our
General Assembly pronounced, in no uncertain terms, that (1)
"[a]n effective criminal justice system requires
timely restitution to victims of crime and to
members of the immediate families of such victims"; (2)
the former procedures for the assessment of restitution had
"proven to be inadequate and inconsistent from
case to case"; and (3) the purpose of the amendments was
to facilitate both "[t]he establishment of programs and
procedures to provide for . . . full restitution for victims
of crime in the most expeditious manner," as
well as "[t]he effective and timely assessment
. . . of restitution" through "the cooperation and
collaboration of all criminal justice

19

agencies and departments." § 18-1.3-601(1)(e)-(g),
C.R.S. (2024) (emphases added).

         ¶36
The legislature could not have been clearer: The stakeholders
in the criminal justice system must follow the procedures
adopted in 2000 and work together to ensure the effective,
timely, and most expeditious assessment of restitution. Yet,
when we decided Weeks, more than two decades after
the amendments, litigants and trial courts were still
engaging in the "longstanding practice" that failed
to adhere to those amendments. ¶ 2, 498 P.3d at 147.
That's precisely what animated our decision in
Weeks: We sought to buck the stubborn trend.
Id. Despite the prosecution's fervent pleas to
backtrack now, we see no reason to reverse course.

         ¶37
Importantly, were we to acquiesce and embrace the
prosecution's position, it would permit a trial court to
correct an illegal sentence like the one Snow received by
simply requiring payment of an amount of restitution many
years or even decades after the sentencing hearing. We
decline the invitation to be led down this primrose path. We
are as unwilling to ignore our legislature's intent today
as we were when we announced our decision in Weeks.

         ¶38
Here, as in Weeks, the sole remedy consistent with
the legislative intent behind subsection (1) is vacatur of
the untimely restitution order and entry of an order pursuant
to subsection (1)(d) that there is no restitution owed. Under
the circumstances of this case, a subsection (1)(d) order,
unlike an order pursuant to

20

subsections (1)(a)-(c), honors the legislature's overhaul
of our restitution system to (1) require the entry of at
least one of the four enumerated restitution orders at
sentencing and (2) ensure the effective, timely, and most
expeditious assessment of restitution.[12] Absent
ramifications for a trial court's failure to comply with
section 18-1.3-603, there is no way to effectuate our
legislature's intent in revamping our restitution
scheme.[13] Otherwise, section 18-1.3-603's
requirements might as well not exist.

         ¶39
The prosecution nevertheless protests that a subsection
(1)(d) order of no restitution is improper because the victim
in this case actually suffered pecuniary losses. In other
words, the prosecution posits that a court may enter a
subsection (1)(d) order of no restitution only when there is
a factual basis for a finding that no victim
suffered pecuniary losses. But no such limitation exists in
subsection (1)(d). Besides, were we to take that view, it
would lead to an absurd

21

result-a trial court would be required to order restitution
in a case with a factual basis for a victim's pecuniary
losses, even though it failed to timely determine those
losses. And the same result would presumably obtain in a case
in which the prosecution presented the restitution
information decades after it was due.

         ¶40
Furthermore, the prosecution's logic would leave
defendants without a remedy for a trial court's untimely
entry of a restitution order. Nothing in the statute suggests
that the legislature intended such a result. Thus, reading
the statute as a whole, a subsection (1)(d) order of no
restitution is justified not only when there is no factual
basis that a victim suffered pecuniary losses but also when
the court fails to timely determine them. In this case, the
district court performed its statutory responsibilities in an
untimely fashion, so a subsection (1)(d) order is justified
to correct Snow's illegal sentence.[14]

         III.
Conclusion

         ¶41
For the foregoing reasons, we reverse the division's
judgment. We remand with instructions to return the case to
the district court so that it may vacate the

22

post-sentencing restitution order and enter an order of no
restitution pursuant to subsection (1)(d).

---------

Notes:

[1] We refer to a "sentencing
hearing" or "sentencing" when describing a
hearing during which the sentence is imposed and the judgment
of conviction enters.

[2] The transcript of the providency
hearing is not part of the appellate record.

[3] Before us, Snow does not take issue
with the fact that the prosecution's motion was submitted
outside of the court's sixty-day deadline.

[4] When we refer to restitution
"liability," we mean a general obligation to pay
restitution without a determination yet of the amount of
restitution. And when we refer to the "amount of
restitution" or the "restitution amount," we
mean the final amount of restitution.

[5] A trial court may reduce a sentence
under Crim. P. 35(b) if an appropriate motion is filed within
126 days after (1) imposition of the sentence, (2) receipt of
the remittitur following either (a) an affirmance of the
sentence or judgment of conviction or (b) dismissal of the
appeal, or (3) entry of an appellate court's order or
judgment denying review or having the effect of upholding the
sentence or the judgment of conviction. A trial court may
also reduce a sentence at any time pursuant to a limited
remand ordered by an appellate court during the pendency of a
direct appeal. Crim. P. 35(b). Snow did not appeal his
judgment of conviction, so the 126-day deadline started
running upon the imposition of his sentence.

[6] The answer brief advances contentions
that exceed the scope of the issues we agreed to review. By
way of example, the prosecution urges, for the first time in
these proceedings, that defendants lack standing to challenge
the timeliness of the restitution component of their
sentences, which would mean that defendants who are subjected
to a restitution order that is unauthorized by law would be
precluded from contesting the legality of their sentences.
Even assuming without deciding that the prosecution is
entitled to raise this standing contention, we reject it as
devoid of merit. "Any losing person or entity may appeal
a lower court's decision if she was a party to the action
in that court. There is no independent requirement that a
party to a proceeding establish standing to appeal."
Arapahoe Cnty. Dep't of Hum. Servs. v. People in Int.
of D.Z.B., 2019 CO 4, ¶ 7, 433 P.3d 578, 580
(citations omitted). We decline to address any other
arguments not properly before us.

[7] The one exception, which has no
relevance here, is a sentence imposed following a
"conviction for a state traffic misdemeanor offense
issued by a municipal or county court in which the
prosecuting attorney is acting as a special deputy district
attorney pursuant to an agreement with the district
attorney's office." § 18-1.3-603(1), C.R.S.
(2024). For the sake of convenience, we omit any mention of
this anomalous exception when discussing Colorado law on
restitution in this opinion.

[8] Although Crim. P. 32(b) includes a
couple of references to restitution, it doesn't add
anything substantive to section 18-1.3-603. Therefore, this
opinion focuses on the statute.

[9] Consistent with the trial court
proceedings, the appeal in Weeks revolved around
subsection (1)(b). Weeks, ¶¶ 18-20, 498
P.3d at 150-51. The defendant challenged the judgment entered
on the post-sentencing determination of the restitution
amount. People v. Weeks, 2020 COA 44,
¶¶ 1-2, 490 P.3d 672, 673. Accordingly, before us,
the parties briefed issues exclusively related to the
procedures and deadlines applicable when, at sentencing, a
trial court enters a subsection (1)(b) order finding
restitution liability and deferring the determination of the
restitution amount. Weeks, ¶ 32, 498 P.3d at
153.

[10] Even before Weeks, we'd
sanctioned the automatic vacatur or reversal of
post-sentencing orders determining the restitution amount
without statutory authority. See Tennyson II, ¶
59. Weeks simply followed in its predecessors'
footsteps.

[11] Subsection (1)(b) and (1)(c) orders
are not in play here. At the time of the post-sentencing
restitution order, there was no basis to enter a subsection
(1)(b) order and/or a subsection (1)(c) order-and,
understandably, the prosecution doesn't rely on either of
these types of orders as providing an appropriate remedy to
correct Snow's illegal sentence. In any event, like
subsection (1)(a) orders, subsection (1)(b) and (1)(c) orders
must enter before or during the sentencing hearing.
See § 18-1.3-603(1).

[12] We acknowledge that orders pursuant
to subsection (1)(d), just like orders under its three sister
subsections, ought to enter at or before the sentencing
hearing. But courts must have a way to correct an illegal
sentence like the one imposed on Snow. And a subsection
(1)(d) order is the only restitution order in the statutory
list that does that without violating our General
Assembly's intent in revising our restitution
paradigm.

[13] We should not be understood as
suggesting that the district court is the lone culprit in
this case. As we discussed, the court reserved the issue of
restitution in its entirety during sentencing at the
prosecution's request. In fact, as mentioned, the
prosecution didn't request restitution, or even so much
as inform the court and Snow that it intended to seek
restitution, until it submitted the restitution information
some two-and-a-half months after the sentencing
hearing.

[14] Given this outcome, we can dispose
of the second issue on which we granted certiorari (whether
the division erred in relying on Tennyson I instead
of Weeks) in short order. As we make clear in
Tennyson II, ¶¶ 17, 50-53, 57-59, today,
we do not view the division's decision in Tennyson
I to be at odds with our decision in
Weeks.

---------